**Philip E. GOTTSCHALK, Plaintiff,**

v.

**CONSOLIDATED RAILROAD CORPORATION, Defendant.**

No. 77 Civ. 2581 (MP).

United States District Court,
S. D. New York.

April 25, 1979.

255

See also 457 F.Supp. 377 and 460 F.Supp. 592.

Rosen & Rosen, Monticello, New York, for plaintiff by Robert M. Rosen, Monticello, New York.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant by Henry W. Herbert, New York City.

## OPINION

POLLACK, District Judge.

The defendant, Consolidated Railroad Corporation, has moved for summary judgment under Fed.R.Civ.P. 56. For the reasons shown hereafter, its motion will be granted in part and denied in part.

### I.

On September 11, 1976, a freight train operated by the defendant derailed, left the roadbed and destroyed buildings and other property of the plaintiff, who now sues for damages. The plaintiff's property was located on three parcels of land within the railroad's right of way that were leased by the defendant's predecessors to the plaintiff's predecessors and later conveyed to the plaintiff. The defendant asserts that each lease exculpates the lessor from liability for damage to property on the land, even if caused by negligence of the lessor. Pleading the asserted exculpatory clauses, the defendant moved for summary judgment.

The plaintiff raised three arguments against the motion for summary judgment, two of which the Court has rejected, *see* 457 F.Supp. 377; 460 F.Supp. 592. The plaintiff's third argument is that the exculpatory clauses are unconscionable and therefore void under § 235–c(1) of the Real Property Law of New York. Pursuant to § 235–c(2) the Court held an evidentiary hearing on the conscionability of the exculpatory clauses.

## II.

The first of the three parcels of land was leased from the predecessor of the defendant by the plaintiff's grandfather in 1937. The term of the lease was five years and the rent $32.00 per year. The lease provided:

> Said Lessee for himself, his heirs, executors, administrators, successors and assigns, hereby assumes all risk of loss, damage or injury, by fire, accident, collision or otherwise to persons or property on said leased premises or in connection with the use thereof; and all risk of loss by fire to property of said Lessee, or in which he may be interested, on any neighboring premises owned or occupied by said Lessee to which fire shall be communicated from the leased premises, arising out of the condition or location of said leased premises, or the operation, maintenance or existence of the railroad operated by said Lessor, its successors or assigns, or any of its appurtenances; and agrees to indemnify and save harmless said Lessor, its successors and assigns, from all claims for any and all such loss, damage or injury, whether caused by the negligence of the said Lessor, its successors or assigns, or by the negligence of its or their servants, agents or employees, or otherwise.

The plaintiff's father worked in his own father's business in 1937 and testified that his father entered the 1937 lease in order to relocate a nearby feed mill that stood in the way of a new highway soon to be built. He testified also:

> There was no other place around there that he could. It was narrow valley there, a narrow place, and it had to be moved where the most room was and that was the ideal place there, where it was moved to.

In 1942 and again in 1947, the 1937 lease was renewed for five years on the same terms. In 1952 the lease was renewed for five more years and the rent increased to $50 per year. In 1957 the lease was again renewed for an additional five years. Later in 1957, the 1937 lease was assigned by the plaintiff's grandfather to the plaintiff's father. In 1968 the rent under the lease was increased to $150 per year. In 1972 the 1937 lease was extended for a renewable term of one year and the rent increased to $200 per year.

The plaintiff's grandfather leased the second parcel in 1949. The lease provided:

> Lessee hereby assumes all risk of loss of or damage to property of Lessee, or property in which Lessee may be interested, upon or in the vicinity of the leased premises, arising from fire, whether due to the negligence of Lessor, the officers, agents or employes of Lessor, or otherwise. Lessee further hereby assumes all risk of any other loss of or damage to property and injury to or death of persons occurring on said leased premises or in connection with the use thereof, whether caused by the negligence of Lessor, the officers, agents or employes of Lessor, or otherwise. Lessee agrees to release, indemnify and save harmless Lessor from and against any and all loss, damage, injury or death hereinbefore assumed by Lessee, and from and against any and all claims, demands, actions, judgments, costs and expenses which may arise or result therefrom.

The lease was for a renewable term of one year at an annual rent of $18. In 1957 this lease was assigned by the plaintiff's grandfather to the plaintiff's father. In 1968 the rent was increased to $60.

In 1966 the plaintiff's father leased the third parcel. The lease was for a renewable term of one year at an annual rent of $25.

The lease included the clause quoted above from the 1949 lease and also provided:

It is further hereby understood and agreed by and between the parties hereto that Lessee shall furnish contractual liability insurance with bodily injury liability limits of Twenty-five Thousand Dollars ($25,000.00) each person and Fifty Thousand Dollars ($50,000.00) each accident and with property damage liability limits of Ten Thousand Dollars ($10,-000.00) each accident and Fifty Thousand Dollars ($50,000.00) in the aggregate to cover the liability assumed under the indemnification provisions of this lease; such insurance to be in form and scope satisfactory to Lessor, and to be kept in force and effect during the continuance of this lease, for the protection and indemnification of Lessor.

The plaintiff's father conveyed his interests, including the three leases, to the plaintiff in 1973.

### III.

■ Under New York law, a contract that purports to release one party from liability for negligence must so provide unequivocally. *Willard Van Dyke Productions, Inc. v. Eastman Kodak Co.*, 12 N.Y.2d 301, 304, 239 N.Y.S.2d 337, 339–40, 189 N.E.2d 693 (1963); *Ciofalo v. Vic Tanney Gyms, Inc.*, 10 N.Y.2d 294, 297, 220 N.Y.S.2d 962, 964, 177 N.E.2d 925 (1961).

The doctrine of *Eastman Kodak* has been relaxed somewhat in its application at least to indemnification agreements. *Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 321 N.Y.S.2d 81, 269 N.E.2d 799 (1971). Nevertheless, even under *Levine*, a party will not be released from or indemnified against liability for his own negligence unless that was the "unmistakable intent of the parties," *id.* at 213, 321 N.Y.S.2d at 86, 269 N.E.2d at 803.

■■ The 1949 and 1966 leases meet the standard of *Eastman Kodak* and *Levine*. They provide explicitly that:

Lessee further hereby assumes all risk of any other loss of or damage to property and injury to or death of persons occurring on said leased premises or in connection with the use thereof, whether caused by the negligence of Lessor, the officers, agents or employes of Lessor, or otherwise.

The 1937 lease, however, does not establish that it was the "unmistakable intent of the parties" to release the defendant from liability for negligence in these circumstances. The relevant paragraph contains three clauses:

[1] Said Lessee for himself, his heirs, executors, administrators, successors and assigns, hereby assumes all risk of loss, damage or injury, by fire, accident, collision or otherwise to persons or property on said leased premises or in connection with the use thereof; [2] and all risk of loss by fire to property of said Lessee, or in which he may be interested, on any neighboring premises owned or occupied by said Lessee to which fire shall be communicated from the leased premises, arising out of the condition or location of said leased premises, or the operation, maintenance or existence of the railroad operated by said Lessor, its successors or assigns, or any of its appurtenances; and [3] agrees to indemnify and save harmless said Lessor, its successors and assigns, from all claims for any and all such loss, damage or injury, whether caused by the negligence of the said Lessor, its successors or assigns, or by the negligence of its or their servants, agents or employees, or otherwise.

The second clause is inapplicable because the derailment in this case caused no fire. The third clause is inapplicable because it covers indemnification of the lessor by the lessee against claims of third parties, not release of liability to the lessee.

The first clause, the one relevant here, neither states unequivocally that the defendant is to be released from liability for negligence nor establishes that it was the unmistakable intent of the parties so to release the defendant. The specific mention of "loss . . . caused by . . . negligence" in the third clause establishes

that when the parties intended to cover liability for negligence they said so directly. The fact that the parties did not mention liability for negligence in the first clause negates an "unmistakable intent" to cover it.°

### IV.

■ Section 235–c(1) of the Real Property Law provides:

If the court as a matter of law finds a lease or any clause of the lease to have been unconscionable at the time it was made the court may refuse to enforce the lease, or it may enforce the remainder of the lease without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

New York courts have adopted the test of unconscionability set forth in *Williams v. Walker-Thomas Furniture Co.*, 121 U.S. App.D.C. 315, 319–20, 350 F.2d 445, 449–50 (1965):

Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

*See, e. g., Rodriguez v. Nachamie*, 57 A.D.2d 920, 395 N.Y.S.2d 51 (2d Dept. 1977); *Albert Merrill School v. Godoy*, 78 Misc.2d 647, 357 N.Y.S.2d 378 (Civ.Ct. N.Y. Co.).

Under this test it cannot be held that the provisions of the 1949 and 1966 leases that released the defendant from liability for its own negligence were unconscionable at the time they were entered into. The plaintiff introduced no evidence about the presence or absence of meaningful choice on the part of his grandfather or father in entering these two leases. As to the reasonableness of the exculpatory clauses, both the plaintiff and his father realized that, under the 1949 and 1966 leases, they had assumed the risk of negligent occurrences created by acts of the defendant. Perceiving such risk, they purchased insurance on the buildings and equipment covering the type of mishap that occurred. The amount of the insurance was fixed by the successive lessees.

In consequence it cannot properly be said that § 235–c(1) of the Real Property Law has any application to the facts herein.

### V.

Accordingly, the defendant is entitled to dismissal of so much of the claims herein as relate to real or personal property on land covered by the 1949 and 1966 leases, and its motion for summary judgment is granted to that extent only.

The plaintiff, however, is entitled to recover for negligent damage by the defendant to property on land covered by the 1937 lease. A trial of that issue will be scheduled promptly on advice to the Court that all pre-trial discovery and other preparation has been completed and on submission of a pre-trial order, which in no event should be later than 60 days from this date.

The foregoing shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

SO ORDERED.