OPINION OF THE COURT
David B. Saxe, J.
A psychotherapist who encourages and permits a patient to incur a debt for therapeutic services far beyond her ability to afford, may have (1) betrayed the confidence and trust expected in the psychotherapeutic relationship; and, (2) occasioned the creation of an unconscionable contract between the therapist and patient.
The plaintiff is a clinical psychologist educated at Columbia University who practices psychotherapy in New York City. The defendant, Betsy Landau, became the plaintiff’s patient in the fall of 1969 and continued through approximately the fall of 1977. At all times during the eight years of therapy, the defendant maintained an outstanding money balance with Dr. Geis that gradually grew from several hundred dollars until it reached $8,000 — when she terminated therapy in September, 1977.
Over the years, the defendant made payments to Dr. Geis totaling approximately $4,500. He now claims an *397 additional $8,000 which he alleges represents the balance of the agreed upon price for the psychotherapeutic services that he rendered.
In August, 1973, Dr. Geis furnished the defendant with a form letter which recited his policy regarding fees. In it, he stated that fees for individual sessions were to be “paid at the time service is given with balance current” (einphasis in original).
Attached to this policy letter was a typed note which stated:
“Betsy — Betsy —
“Before you panic about the enclosed think it all over realistically. While it is important to try to be as conscientious as possible re your responsibilities to your therapist, that therapist, while trying to live his own life responsibly re himself and his patients, has no intention of letting you fall into the abyss.
“J.”
More to the point, however, was a later note from Dr. Geis to Ms. Landau which further refined the fee arrangement between them:
“7/31
“Betsy —
“To remind you of my admonition ‘not to worry about the bill — do what you would normally do in payment, consider $250 put off indefinitely, and see me and don’t worry about my other charges.’ I’ll go as far as I can with you because you’re Betsy!”
The defendant had severe financial problems throughout her treatment. For example, she testified that during the course of therapy she and her husband separated and that there were times when she did not have enough money to feed her son as a result of protracted difficulties in obtaining money from her husband. Dr. Geis testified that he knew that the defendant could not obtain financial assistance from her former husband, and that it would be impossible for the defendant to afford his fees but that he hoped that she would eventually receive money from her *398 husband and additionally get a job. I specifically asked Dr. Geis if he discussed fee arrangements with the defendant. He responded that he could not recall but that he “considered the defendant to be an ethical person” and thought that she would pay him.
For her part, the defendant testified that she constantly raised the issue of the mounting balance which she said made her want to terminate therapy and caused her to feel “awful”. But, she said, Dr. Geis would have no part of these fears. Dr. Geis explained that his reluctance to press the issue of fees was an example of his kindness to her. He states that seeing Ms. Landau had been a “labor of love” and that she had been grateful to him. Mrs. Landau thought otherwise. In fact, she testified that the doctor’s actions were not a favor at all but that she felt that she was being “strangled” by him as she became further involved in therapy.
Fundamental to a resolution of the issues raised here, is an examination of the contract between the therapist and the patient. In order for a contract to come into existence, there must be a meeting of the minds between competent parties regarding the terms of the contract. (21 NY Jur 2d, Contracts, § 29.) Under ordinary circumstances, a therapist can certainly expect payment from a client once he has been specifically engaged to render such services at an agreed upon price and then adequately renders the contemplated services to the client. (See Lipshutz v Liberthal, NYLJ, June 18, 1981, p 11, col 1.)
The contract between the therapist and the patient must however be understood and interpreted in light of the circumstances reasonably known by the therapist to be taking place in the life of the patient. It is apparent from the testimony of both parties that throughout her treatment, the defendant was emotionally distraught and often living through emotional and financial crises.
Dr. Geis was in a position to assess the client’s emotional state and determine if she was competent to adequately understand her situation and determine the best type of therapy that she needed including its cost (which amounted to over $12,000). Treatment of the fee issue in a psychotherapeutic environment is a complicated and diffi *399 cult problem. (See Dibella, Mastering Money Issues That Complicate Treatment: The Last Taboo, vol XXIV, American Journal of Psychotherapy; Brown and Dunbar, MMPI Differences Between Fee-Paying and Non-Fee-Paying Psychotherapy Clients, Journal of Clinical Psychology, Oct., 1978, vol 34, No. 4.)
In psychotherapy, which is generally a long-term treatment over many years as opposed to one-time medical emergency treatment due, for example, to an accident or illness, it is possible that the patient may find herself years down the road with many emotional problems still intact and with no idea how the treatment will be paid for. The therapist often seems to hold the only lifeline. This seems to have been the situation between these litigants. During the entire eight years of treatment, the defendant had a steadily mounting unpaid balance and Dr. Geis never explored with her the issue of whether she was getting in over her head. Furthermore, I questioned Dr. Geis as to whether he discussed with the defendant the possibility of her obtaining lower-cost psychotherapy elsewhere. He stated that in his opinion, low-cost clinics provided only inexperienced care and were not helpful. He stated, “I thought we were doing something important” and didn’t suggest alternatives. In other words, Dr. Geis made a unilateral decision that only he could help the defendant.
The contract in question is not a normal commercial agreement between equally competent parties but instead requires close scrutiny to determine if it was unconscionable. (Albert Merrill School v Godoy, 78 Misc 2d 647; Gottschalk v Consolidated R.R. Corp., 469 F Supp 254.) The application of the doctrine of unconscionability first presupposes the existence of a lack of meaningful choice on the part of one of. the parties to the contract. (Williams v Walker-Thomas Furniture Co., 350 F2d 445, 449-450.)
In evaluating facts to determine if one party to a contract is exercising a meaningful choice, the examining court should consider if “meaningful choice * * * [was] negated by a gross disparity in the bargaining power of the contracting parties. The court should consider the experience and education of the party claiming the contract to be unconscionable as well as the commercial setting sur *400 rounding the transaction”. (BGW Assoc, v Valley Broadcasting Co., 532 F Supp 1112, 1114.)
I have no doubt that Dr. Geis, holding a doctorate degree from Columbia University, being a practicing psychotherapist for many years, associated with a psychotherapy institute and a supervisor himself, exerted a greater bargaining power than did his emotionally and financially distraught patient. It is apparent that the defendant was clinging to him and that he encouraged her to do so. As the expert, fully aware that his emotionally troubled patient had transferred decision-making power to him, Dr. Geis knew or should have known that his patient was not exercising a meaningful choice about continuing to see him. Dr. Geis attempted to portray himself as the defendant’s only hope. Yet it cannot be that the only alternative to terminating therapy was to have the patient build up enormous debts she could not pay. I do not believe Dr. Geis’ assertion that there was no other adequate lower-cost psychotherapy available in New York City. Based on the foregoing, I find that the contract was unconscionable.
I note further that Dr. Geis and Mrs. Landau had a fiduciary or confidential relationship.
“A ‘confidential relationship’ may be described as a relation arising out of a close and intimate association which creates and inspires trust and confidence between the parties so associated. When such relationship exists, the law, in order to prevent undue advantage from the confidence or trust which the relation naturally creates, will carefully scrutinize transactions between the parties to prevent any abuse of confidence or betrayal of trust, and if there are any misrepresentations or concealment of material facts, or just suspicion of artifice or undue influence, relief will generally be granted to the one whose confidence has been abused. Typical of persons as between whom there is a fiduciary relationship are * * * where the grantee is usually more than morally bound to act in the best interest of the grantor and the grantor is justified in reposing special trust and confidence in the grantee’s fidelity. The confidential relationship protected extends not only to the family, but to many others bound by intimacy *401 and trust.” (Emphasis supplied.) (61 NY Jur, Trusts, § 146.)
As psychotherapist and patient, Dr. Geis and Mrs. Landau had a close and intimate association. It has already been stated that Mrs. Landau deferred her own decisions to those Dr. Geis made for her. Dr. Geis, as Mrs. Landau’s “healer”, used his position of confidence to encourage his patient to amass outstanding fees of $8,000 when she had no means of paying him back, all the while telling her not to worry. These actions cannot be held to have been in Mrs. Landau’s best interests, and are seen by this court in the context of an existing confidential or fiduciary relationship as an abuse of confidence and a betrayal of trust.
In Matter of Sbarro Holding (Shien Tien Yuan) (111 Misc 2d 910, 913), where a fiduciary relationship existed between a franchisor and franchisee, founded on the confidence of one party in the integrity and fidelity of the other, the court held that: “neither party had the right, under rules of equity, to take selfish advantage of the trust or to permit either party * * * to benefit by prejudicing the other. Since hard bargaining is an impossible ingredient with parties in these relationships, each must act with the utmost good faith and with the full knowledge, understanding and consent of the other”.
Dr. Geis, in encouraging Ms. Landau to accrue a debt, telling her she had nothing to worry about, and then subjecting her to a lawsuit, certainly prejudiced her. Dr. Geis has neither demonstrated good faith, nor that he acted “with the full knowledge and consent” of Ms. Landau.
“There is implicit in all contracts — for book publishing or house building — an implied covenant of fair dealing and good faith”. (Van Valkenburgh, Nooger & Neville v Hayden Pub. Co., 30 NY2d 34, 45, cert den 409 US 875; Zilg v Prentice-Hall, Inc., 515 F Supp 716, 718.)
The contract between a therapist and patient is one which requires a scrupulously high degree of fair dealing. Dr. Geis has not exhibited the degree of fair dealing one would expect, under the circumstances of this case. He had an obligation to his patient not to permit her to expose herself to a lawsuit by him.
*402 Alternatively, based upon the facts, I find that Dr. Geis waived his rights to enforce the contract. Dr. Geis deliberately agreed to see a patient who, for eight years had no means of paying for his services.
Although he sent her bills, he regularly told her not to worry. Dr. Geis continued to see her as her debt mounted to $8,000 in spite of his written policy that fees were due when services were rendered, accepting as payment the amounts she did offer. Dr. Geis testified that they both hoped she would receive money from her former husband, which never happened.
Dr. Geis wrote a note to Ms. Landau that he had “no intention of letting you fall into the abyss.” He also wrote to her that he would put off some money indefinitely and that she was “not to worry about any other charges.” Defendant testified that Dr. Geis “always gave me the feeling that I was special” and didn’t have to worry about payment.
Further, defendant bitterly testified that at one point, when she was in a position to wipe out her debt, Dr. Geis encouraged her to instead use the money to take a trip to Europe with her husband in an effort to save her floundering marriage. Dr. Geis stated that he often extended credit to patients in this manner. He further stated that he had been criticized by “everyone I know” for his billing practices, including criticism from his own office manager, who handles the billing of patients. He testified, however, that he is not concerned with this criticism because he believes he is helping more people and is a humanitarian. (But see Hofling and Rosenbaum, The Extension of Credit to Patients in Psychoanalysis and Psychotherapy, 44 [4] Bulletin of the Menninger Clinic 327, 341-343.)
The Court of Appeals summarized the rules of waiver of contractual rights in Alsens Amer. Portland Cement Works v Degnon Contr. Co., 222 NY 34, 37) as follows: “A waiver, not express, found in the acts, conduct or language of a party, is rarely established as a matter of law, rather than as a matter of fact * * * A waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed. *403 It is the voluntary act of the party and does not require or depend upon a new contract, new consideration or an estoppel * * * It is essentially a matter of intention. Negligence, oversight or thoughtlessness do not create it. The intention to relinquish the right or advantage must be proved.” (See, also, Beacon Term. Corp. v Chemprene, Inc., 75 AD2d 350.)
Dr. Geis knowingly decided to provide psychotherapy to a patient who at no point in their relationship had the present or future ability to pay the amounts billed. Further, he encouraged or permitted her to avail herself of his services on a frequent basis. Dr. Geis’ accounting sheets indicate that there were numerous instances of contacts several times a week, including phone calls, sometimes several per day, which were billed by the minute. He repeatedly urged her not to worry about incurring bills she could not pay. It is clear that Ms. Landau relied on Dr. Geis’ assurances to her that she had nothing to be concerned about. These acts were voluntary and intentional on Dr. Geis’ part. He chose to see a patient who had no ability to pay him, not enforcing his stated policy of keeping accounts current, and further, actively encouraged the seemingly endless and frequent number of contacts.
Nor may Dr. Geis obtain recovery on a quantum meruit theory. (Levi v Power Conversion, 47 AD2d 543.)
My decision in this case is not intended to mean that a psychotherapist can never extend credit to a patient and still expect payment. Here, the therapist knowingly accepted a patient who had no ability to pay and only a dream for the future. In short, she was fully encouraged to overextend herself over a protracted time period, despite her protests.
Dr. Geis maintains that he was a humanitarian. After listening to the testimony, I disagree. No professional obligations required him to carry out the therapy with Ms. Landau in the manner he did. The only obligation that he had was that his dealings with his patient, contractual and otherwise, be fair. They were not. Judgment for the defendant.